## No. 4975.

### JOHN M. CARR vs. LOUISIANA NATIONAL BANK.

A contract of pledge invalid, as to one of its clauses, at the moment of its formation, may be made valid by a subsequent act of the Legislature, enacted for that purpose; and a *renewal* of the contract, after the passage of such an act, makes it legal.

APPEAL from the Sixth District Court, parish of Orleans.  *Saucier*, J.

*Alex. T. Steele*, for plaintiff and appellant.

*Lea, Finney & Miller*, for defendant.

The opinion of the court was delivered by

DEBLANC, J.  Plaintiff claims from defendant, in cash, $5543 76, and, in legislative warrants, $8822 48, for this: On or about the fifteenth of August, 1871, he effected with said defendant a loan of $14,366 24. That loan is evidenced by a note dated fifteenth of August, 1871, payable one year after date, drawn by plaintiff and indorsed by J. Pinckney Smith. To secure said loan, plaintiff pledged with said bank, as collaterals, $28,732 48 worth of legislative warrants, issued to pay the per diem and mileage of members during the session of 1871. The note thus given became due on the eighteenth of August, 1872, but was renewed and extended for one year.

Plaintiff alleges that on Friday, the twenty-first of March, 1873, at about two o'clock, p. m., J. H. Oglesby, President of the Louisiana National Bank, and acting for it, met him at the corner of Gravier and Baronne streets, and asked him to sign a paper which he, Oglesby, then held in his hand, the purport of which was an agreement to allow the sale of the pledged warrants at thirty-five cents on the dollar; that it was all they were worth, and that he would credit the amount in extinguishment of plaintiff's note; that, upon the representations and at the urgent request of said Oglesby, he signed said agreement; that at the time he made these representations the said Oglesby had already obtained from the Auditor of Public Accounts a warrant on the State

Treasurer for $19,910, in exchange for an equal amount of the pledged warrants; that, to the knowledge of Oglesby, an appropriation of twenty thousand dollars had been made to pay such warrants, which were worth their face value, and that, on his part, it was a fraud and a deception to have induced plaintiff to consent to a sale at thirty-five cents on the dollar.

In its answer, the Louisiana National Bank, after the general issue, sets up the pledge made by plaintiff, admits the receipt of new warrants to the amount of twenty thousand dollars in lieu of those first delivered, and avers the insufficiency of what remains of those collaterals to pay the pledged debt. It also acknowledges that, since the date of its answer, the new warrants were sold for seven thousand one hundred dollars, credited on plaintiff's note.

What are the terms of the pledge referred to ?  "I, John M. Carr, do hereby consent and agree that, in case my note shall not be punctually paid at maturity, the Louisiana National Bank shall have the right to sell and transfer the warrants so pledged, for cash, at public or private sale, without notice, at the option of said company, and the proceeds of said sale shall be appropriated to the payment of my said note, and all costs and charges attending the sale."

The pledge made on the fifteenth of August, 1871, was renewed by plaintiff on the thirteenth of February, and thirteenth of April, 1872. On the twenty-third of February, 1872, the Legislature adopted an act amending article 3165 of the Civil Code, and "authorizing the sale or other disposition of the property pledged, in such manner as may be agreed upon by the parties, without the intervention of courts of justice, and providing that all pledges then existing shall remain in force and be subject to the provisions of this act."

Admitting the nullity—at its date—of the clause in the act of pledge of 1871 which authorized the private sale, and without notice, of the pledged warrants, was not its renewal on the thirteenth of April, 1872, a new contract, or, if less than that, the revival of a once prohibited and then authorized contract? On this point the argument of plaintiff's counsel is ingenious, but certainly not reasonable, for it is difficult to realize how the nullity pronounced by a repealed law can survive the repeal of that law, to wit: a contract or acknowledgment posterior to that repeal, and destroy the effect of an agreement authorized by a special act of the Legislature, one adopted expressly to legalize and sanction such contracts.

Had the Legislature in 1873 passed an act avoiding the condition to sell without intervention of courts in every contract of pledge entered into after the adoption of the act of 1872 the pledgers could have justly complained that such a provision had impaired and defeated an acquired

right, but plaintiff can not seriously complain of an act which validates his invalid contract, and imparts to its last renewal a validity which, perhaps, it had not at its origin.

The legislative warrants were not exchanged for but converted into Auditor's warrants. Their form was improved, their substance was not altered. They were, after as before that indispensable conversion, the property of Carr, the pledge of the bank, a debt of the State. They were dressed as required by law to gain admittance in the treasury, and in their new form increased in value. Their undressed twins at the date of the trial were still in the coffers of the bank, and, according to the evidence, absolutely worthless.

If, as charged by plaintiff, there really was an exchange of the warrants, was it not like an exchange of copper for gold, and is this not the occasion to apply the rule "that the mandatary is not considered as having exceeded his authority, when he has fulfilled the trust confided to him in a manner more advantageous to the principal than that expressed in his appointment." R. C. C. 3011.

The additional grounds raised by plaintiff are :

First—That the bank was without authority to part with the pledged warrants, except for cash. That is exactly what it did; they were sold for seven thousand one hundred dollars in cash.

Second—That the authority to sell legislative warrants was no authority to sell the Auditor's warrants. This is a distinction in form, not in substance. The bank sold what it held as a pledge, a claim of plaintiff against the State, the identical claim pledged by the latter, then indorsed by the Auditor's warrants.

Third—That defendant has sacrificed said warrants, and is liable for their value. They were sold on the twenty-fifth of April, 1873, for one cent more on the dollar than the lowest price fixed by plaintiff, and, we presume, for one cent less than might have been obtained at that date. On the thirtieth of June, 1873, the bank, through its counsel, allowed J. M. Carr, the plaintiff, a credit of two hundred dollars on a judgment rendered in its favor and against said Carr. That credit covers the difference between the price received from the sale of the warrants and that which Newman said "he was inclined to believe he offered for them." Considering the date of the sale and their value at that date, the warrants were not sacrificed.

Plaintiff contends that there never was but one act of pledge between him and the bank, that of 1871, and that said pledge being the only one in existence in 1872, the law when adopted could not, without impairing the obligation of that contract, authorize the private sale previously prohibited. That said law impaired the rights of John M. Carr on the property he had pledged. If so, all he had to do, instead of renewing

Carr vs. Louisiana National Bank.

his contract, instead of authorizing as he did, the sale at thirty-five cents on the dollar, would have been to plead the nullity of the pledge, or rather of one of its clauses, that which he himself had either proposed or accepted. He did the very reverse, and of his own accord, over his own signature, far from repudiating the provision of the act of 1872, which legalized the one illegal clause of his contract, he renewed his obligation and the pledge by which it was secured.

Of what right can plaintiff claim that he has been divested? Is it of the right to disregard an agreement which he sought to withdraw, a consent which he gave to cancel a condition which he fixed, to contest a privilege which he granted? In this instance, he could have been divested but of the right of violating one of the most important conditions of his contract, and that right has been swept away by his own act and the statute of 1872.

There is no error in the judgment appealed from.

It is therefore ordered, adjudged, and decreed that said judgment be and it is hereby affirmed at appellant's costs.